IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS X. CHENEY, II | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DAILY NEWS, L.P. | : | NO. 15-1194 |

MEMORANDUM

Dalzell, J.  May 6, 2015

## I. Introduction

We consider here defendant Daily News, L.P.'s (the "Daily News") (incorrectly sued as "New York Daily News Company" in the initial complaint) motion to dismiss plaintiff Francis X. Cheney, II's complaint. Cheney, a Philadelphia firefighter, sued the New York Daily News for false light/invasion of privacy, defamation/libel, and intentional infliction of emotional distress based on the use of his photograph in a January 29, 2015 article about a Philadelphia Fire Department scandal in which Cheney had no involvement.

We have jurisdiction pursuant to 28 U.S.C. § 1332.[1]

## II. Standard of Review

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550

---

[1] The Daily News properly removed from the Court of Common Pleas of Philadelphia County to this Court pursuant to 28 U.S.C. §§ 1441, 1446. See Notice of Removal at ¶¶ 5, 7-10, 11 & n.1.

U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the relevant facts as they appear in the complaint.

### III.   Factual Background

Defendant Daily News publishes the New York Daily News in print and online at http://www.nydailynews.com. On January 29, 2015 the Daily News published an article on its

Web site with the headline "Heated Sex Scandal Surrounds Philadelphia Fire Department: 'It's Bad Stuff.'" Compl. at ¶ 6. Below the headline, the Daily News placed a picture of Cheney in his Philadelphia Fire Department uniform with the caption, "Philadelphia firefighter Francis Cheney holds a flag at a 9/11 ceremony in 2006." Id. at ¶ 7; Pl. Resp. Ex. B at 3.

After the photograph, the article began: "A sex scandal has set Philadelphia Fire Department ablaze with firefighters accused of having sex with a paramedic on- and off-duty."[2] Compl. at ¶ 8. The article described possible charges for the firefighters involved, called the conduct a "terrible embarrassment," and quoted the former Philadelphia Fire Commissioner as

---

[2] The 182-word article reads in its entirety:

> A sex scandal has set Philadelphia Fire Department ablaze with firefighters accused of having sex with a paramedic on- and off-duty. The investigation implicates dozens of city employees including paramedics, firefighters and the department's supervisors, who could face charges related to unbecoming conduct, sources told the Philadelphia Daily News. "It's bad stuff," former Philly fire Commissioner Lloyd Ayers told the paper. "That was the word we had." The scandal came to light last year when a fellow paramedic filed a[n] Equal Employment Opportunity complaint alleging misconduct by a female paramedic. As the investigation was handed to the department's Special Investigations Office, rumors surfaced that the female paramedic had sexual encounters with colleagues at firehouses, Philly.com reported. Photos, video and text messages that validate the allegations are said to exist, local reports said. It's "a terrible embarrassment," sources told the Philadelphia Inquirer. The city's inspector general has since finalized a report recommending discipline against those involved, but the office has not confirmed such an allegation. The city confirmed an independent investigation, but declined to comment on the nature of allegations, the Inquirer added.

Nicole Hensley, Heated sex scandal surrounds Philadelphia fire department: 'It's bad stuff', N.Y. Daily News (Jan. 29, 2015, 11:31 AM), http://www.nydailynews.com/news/crime/sex-scandal-surrounds-philly-firefighters-bad-stuff-article-1.2096219.

stating that the scandal was "bad stuff." Id. The article indicated that an investigation implicated "dozens of city employees including paramedics, firefighters and the department's supervisors." Pl. Resp. Ex. B. The article provided no individual names. Id. Cheney was entirely uninvolved in the described scandal. Compl. at ¶ 10.

The next day, January 30, 2015, the Daily News published a second article on its Web site that described the alleged "sexual abuse and degradation of a non-consenting city employee". Id. at ¶ 9. The second article included neither Cheney's name nor picture, either in connection with the story or as a "retraction." Id.

Plaintiff avers that the first article with Cheney's photograph and the identifying caption "has been copied and republished elsewhere on the internet", id. at ¶ 13, and the Daily News "has not taken any steps to prevent republication of the articles, including republication on the internet," "has not taken any action to have the defamatory content removed from other websites," and "has not published any retractions exonerating plaintiff of any involvement in the scandal, or apologies for leading viewers and readers to believe that the plaintiff was involved in the alleged" scandal. Id. at ¶¶ 17-19.

Cheney "has been flooded with messages concerning the false and defamatory statements, including from colleagues at the Philadelphia Fire Department, family, friends, and strangers." Id. at ¶ 14. Cheney avers that the Daily News "was aware that the photo it published with the caption containing plaintiff's name was taken during a 9/11 ceremony held in 2006, and had no connection to the headline or article concerning an alleged 'sex scandal' alongside of which it appeared," and Cheney asserts that the Daily News "has acknowledged that its placement of plaintiff's photo and name in between the headline and the article suggested that the plaintiff was involved" in the scandal. Id. at ¶¶ 12, 15. Cheney alleges that "[a]ny reasonable

4

viewer of the defendant's publication would believe that plaintiff was involved in the 'sex scandal' described in the publication." Id. at ¶ 16.

Cheney alleges that he "has been unfairly brought into scandal and reproach, and has been held up to odium, scorn and contempt among his family, friends, co-workers, associates, and employers; and was wrongfully suspected by them to have been guilty of the despicable acts and behavior" described in the article. Id. at ¶ 26(e). He alleges he "has suffered and will continue to suffer an invasion of privacy and has been held in a false light amongst the greater community," straining relations with family, friends, and co-workers. Id. at ¶ 27. Cheney alleges significant damage to his "prospects to retain his position and/or advance in his employment" and "substantial and irreparable" reputational harm. Id. at ¶¶ 27-28. Cheney also alleges that he has suffered and will continue to suffer "extreme emotional disturbance, with resultant irreparable damage." Id. at ¶ 43.

**IV.  Discussion**

Cheney's complaint asserts three causes of action under Pennsylvania law. In Count I, Cheney alleges false light/invasion of privacy. Id. at ¶¶ 24-29. In Count II he alleges defamation/libel. Id. at ¶¶ 31-36. In Count III, Cheney alleges intentional infliction of emotional distress. Id. at ¶¶ 38-44. The Daily News moved to dismiss all three claims. MTD Mem. at 5.

   **A.    Count I: False Light/Invasion Of Privacy**

Pennsylvania courts recognize invasion of privacy as an actionable tort. Marks v. Bell Tel. Co. of Pa., 331 A.2d 424, 430 (Pa. 1975). The Pennsylvania Superior Court has adopted the definition of invasion of privacy as described by the Restatement (Second) of Torts §§ 652B-E. Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (citing

Chicarella v. Passant, 494 A.2d 1109 (Pa. Super. Ct. 1985)). Invasion of privacy includes "four analytically distinct torts," one of which is for "publicity placing a person in false light." Marks, 331 A.2d at 430. Section 652E defines publicity placing a person in a false light as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). The Comments to Section 652E explain that defamation is not a necessary element of this tort: "It is enough that [the plaintiff] is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Id. at § 652E, cmt. b. A publication may place one in a false light if its factual statements imply a falsehood, even if every individual, discrete statement is true. Larsen, 543 A.2d at 1189. The "discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light" may establish a claim for this tort. Id.

The court "must initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the" plaintiff. Harris by Harris v. Easton Publ'g Co., 483 A.2d 1377, 1385 (Pa. Super. Ct. 1984). Integral to that determination is the appearance of the publication as a whole. In deciding a motion to dismiss, we may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefits Guar. Corp., 998 F.2d at 1196. Cheney did not attach a copy of the news article with the offending picture to his complaint, but he did attach a screenshot of the article to his response in opposition to the Daily News's motion to dismiss. Pl.

Resp. Ex. B.[3] The Daily News attached copies of both the January 29 and January 30 articles to its motion to dismiss, as well as a high-resolution copy of Cheney's photograph. MTD Decl. of Adrian Lam Exs. 1-3. There is no extant link to the original version of the article with Cheney's picture, but Cheney included a screen capture of an archival copy of the original article. See Pl. Resp. Ex. B. The archival copy is also available on the Internet, albeit not through the Daily News's Web site.[4] As explained in note 3, we decide whether the defamatory material was capable of being reasonably understood to refer to Cheney by reference to the article as it appeared upon initial publication.

Beneath the prominent headline, there was a brief summary of the article, followed by the byline and other publication information. Id. The beginning of the article was organized into two columns. The left column contained two pictures and the right column contained the text of the

---

[3] The Daily News asserts that after Cheney contacted it on January 30, 2015, it removed the picture and caption identifying Cheney and replaced it with another image. MTD Mem. at 4. Cheney neither confirms nor denies this fact, but rather states that we cannot credit this averment because "it is not integral to or explicitly relied upon in" his complaint, and such a fact would only go to damages, not liability. Pl. Resp. at 6 & n.2. While we agree that such a fact would be relevant to damages, not liability, we take note of this averment because it could explain why there is no active link to a version of the article with Cheney's photograph.

Since we must initially decide whether the defamatory material was capable of being reasonably understood as intending to refer to the plaintiff, we must consider the defamatory material in the context of the original publication. In order to do so, we must consider how the original article appeared when it included Cheney's photograph, which necessitates considering both parties' exhibits. Since Cheney's complaint relies upon the original article with his photograph, our consideration of those exhibits does not transform the Daily News's motion to dismiss into one for summary judgment. See Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (explaining that a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading" on a motion to dismiss).

[4] See Nicole Hensley, Heated sex scandal surrounds Philadelphia fire department: 'It's bad stuff', N.Y. Daily News (Jan. 29, 2015, 11:21 AM), available at http://web.archive.org/web/20150129212505/http://www.nydailynews.com/news/crime/sex-scandal-surrounds-philly-firefighters-bad-stuff-article-1.2096219 (last accessed Apr. 29, 2015, 11:04 AM).

article. In the left column, the reader could toggle[5] between two photographs. Id. The first depicted a firefighter climbing a ladder in the foreground with a burning building in the background. Id. The caption read, "A Philadelphia firefighter climbs a ladder during a fire in Coatesville, Pa., in 2009."  See Hensley, Heated sex scandal surrounds Philadelphia fire department: 'It's bad stuff', cited at supra n. 4.  The second photograph was of Cheney. Id. Cheney appeared in profile, holding an American flag. Id. The caption read, "Philadelphia firefighter Francis Cheney holds a flag at a 9/11 ceremony in 2006." Pl. Resp. Ex. B.[6] The bottom right corner of the photograph, which appeared in focus, was dominated by the Philadelphia Fire Department shoulder patch on Cheney's uniform. MTD Decl. of Adrian Lam Ex. 1. The top right of the photograph was dominated by the side of Cheney's face, which, while not blurred, was out of focus. Id. The left side of the photograph was almost entirely taken up by the American flag Cheney was holding. Id.

---

[5] Cheney included a screen capture, or screen shot, of the article as it appeared with his picture. The live link to the article now includes a generic photograph of the Philadelphia Fire Department's crest and shield. See Nicole Hensley, Heated sex scandal surrounds Philadelphia fire department: 'It's bad stuff', N.Y. Daily News (Jan. 29, 2015, 11:31 AM), http://www.nydailynews.com/news/crime/sex-scandal-surrounds-philly-firefighters-bad-stuff-article-1.2096219 (last accessed Apr. 29, 2015, 11:10 AM).
    The archival copy of the article does not permit the viewer to interact with any original multimedia aspects of the article. However, the Court takes judicial notice of the fact that, as the photographs appear in the archival copy of the article, it is clear that a user encountering the article when it was "live" on the Daily News's Web site would have been able to select or toggle between the two photographs.

[6] Again, because the version of the article with Cheney's picture is available only in an archival form, it is not possible to "click" through to see the photograph and caption. However, Cheney included a screen shot of the picture with the caption in his response. Pl. Resp. Ex. B. The Daily News attached a larger version of the photograph without the caption. MTD Decl. of Adrian Lam Ex. 1. The pictures appear to be identical, and no party has contested the authenticity of the other party's exhibits. We will therefore refer to the particular exhibit upon which we base our observations, while taking judicial notice of the fact that the exhibits are the same photograph of Cheney, just in different contexts and with higher or lower resolutions.

Because the inclusion of Cheney's photograph along with the accompanying caption could not reasonably be read to imply that Cheney was involved in the scandal, Cheney cannot establish a claim for false light/invasion of privacy. Cheney's photograph appears as one of two in the article, and the first photograph is clearly a generic photograph of a Philadelphia firefighter performing his duties at the scene of a fire several years before the scandal covered in the article. In that context, the second photograph, which emphasizes the crest on Cheney's jacket and clearly indicates via the caption that the photograph is of Cheney performing official duties at a memorial ceremony many years before the scandal at issue, does not imply that Cheney was one of the firefighters involved in the scandal.[7]

Cheney cannot establish that the inclusion of his photograph is the type of "discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light." Larsen, 543 A.2d at 1189. Nothing in the article suggests that either firefighter in the two pictures is at all involved in the scandal. There is no innuendo or suggestion that the pictures are included as anything other than generic references to the Philadelphia Fire Department at large. While Cheney objects to the proximity of his likeness to a

---

[7] Cheney's case is distinguishable from Illustration 2 to Comment B in the Restatement (Second) of Torts § 652E:
> A is a taxi driver in the city of Washington. B Newspaper publishes an article on the practices of Washington taxi drivers in cheating the public on fares, and makes use of A's photograph to illustrate the article, with the implication that he is one of the drivers who engages in these practices. A never has done so. B is subject to liability to A for both libel and invasion of privacy.

Restatement (Second) of Torts § 652E, cmt. b, ill. 2. Unlike the taxi driver in the above illustration, there is no implication that Cheney was one of the firefighters involved in the scandal. Central to the hypothetical is that the photograph of the taxi driver is connected to the article about cheating and so one could imply that he is a cheating driver. While Cheney's photograph appeared to illustrate the article in question, nothing in the article implied his particular involvement in the scandal.

9

written description of unseemly acts committed by other Philadelphia firefighters, it is clear from the context of the article that Cheney's photograph was included as stock footage, and there is no reasonable inference from the inclusion of the photograph that <u>he</u> was involved in the scandal. We will therefore dismiss Count I of the complaint.

      **B.**      <u>**Count II: Defamation/Libel**</u>

In Pennsylvania, when properly raised, the plaintiff in a defamation or libel case bears the burden of proving: (1) the defamatory character of the communication, (2) publication by the defendant, (3) application to the plaintiff, (4) the recipient's understanding of the publication's defamatory meaning, and (5) the recipient's understanding of the publication as intended to be applied to the plaintiff. 42 Pa. Cons. Stat. Ann. § 8343(a)(1)-(5).[8] Libel is "the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule." <u>Tucker v. Philadelphia Daily News</u>, 848 A.2d 113, 124 (Pa. 2004) (quoting <u>Schnabel v. Meredith</u>, 107 A.2d 860, 862 (Pa. 1954)).

The trial court initially determines whether the challenged publication is capable of a defamatory meaning. <u>Thomas Merton Ctr. v. Rockwell Int'l Corp.</u>, 442 A.2d 213, 215 (Pa. 1981). If the court determines that the publication could be defamatory, then a jury must determine whether the recipient understood the publication to be defamatory. <u>Corabi v. Curtis Publ'g Co.</u>, 273 A.2d 899, 905 (Pa. 1971). A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties

---

[8] The statute contains two other elements. <u>See</u> 42 Pa. Cons. Stat. Ann. § 8343(a)(6)-(7) (special harm to the plaintiff and abuse of a conditionally privileged occasion). States are permitted to define for themselves the appropriate standard of liability for a publisher of a defamatory falsehood regarding a private individual so long as they do not impose liability without fault. <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 347 (1974). A plaintiff must therefore show at least negligence to establish a claim. <u>Id.</u>

from associating or dealing with him." Tucker v. Philadelphia Daily News, 848 A.2d 113, 124 (Pa. 2004) (quoting Birl v. Philadelphia Elec. Co., 167 A.2d 472, 475 (Pa. 1960)). Embarrassment and annoyance are insufficient. Id.

The article's allegations of employment-related sexual misconduct are clearly capable of defamatory meaning as such allegations would tend to inflict reputational harm, lower the alleged wrongdoer's estimation in the community, or deter third parties from associating with the alleged wrongdoer.

But to recover, a plaintiff must show that the defamatory statement was "of and concerning" him, and a plaintiff cannot recover if the alleged defamatory statements "could not reasonably be read as accusing [the plaintiff] of personal involvement in the acts in question." New York Times Co. v. Sullivan, 376 U.S. 254, 288-89 (1964). The court "must initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the" plaintiff. Harris by Harris, 483 A.2d at 1385. We consider the defamatory material in context. Corabi, 273 A.2d at 906. A plaintiff who attempts to show defamation by innuendo must show that the alleged innuendo was warranted, justified, and supported by the publication itself. Thomas Merton Ctr., 442 A.2d at 217. Unreasonable inferences cannot support a claim for defamation by innuendo. Id. While a plaintiff need not be named in a defamatory publication to recover, "the court must initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the" plaintiff. Harris by Harris, 483 A.2d at 1385.

As explained in Part IV.B, the allegedly defamatory material in the article is not capable of being reasonably understood as intended to refer to Francis Cheney. The caption accompanying his picture makes clear that it is an old photo from a memorial ceremony in 2006. The photograph's focus is on the Philadelphia Fire Department patch on Cheney's coat, not

Cheney himself. The inclusion of a second picture of an unnamed Philadelphia firefighter responding to a fire years before emphasizes that both photographs are to provide texture, not content, to the article. Further, nothing in the article refers to either picture or constitutes innuendo that either pictured firefighter had any relationship to the story beyond being a Philadelphia firefighter.

This case is analogous to Schonek v. WJAC, Inc., 258 A.2d 504 (Pa. 1969). In Schonek, the Supreme Court of Pennsylvania held that while a broadcast included defamatory statements, the statements "in no way charge[d] the plaintiff with" the conduct alleged in the defamatory statements. Id. at 507. "The communications only stated that plaintiff was a leader of the Truth Committee and that the Committee had made use of a pilfered document. A reasonable man could find no basis for the plaintiff's allegation that the statements accused him of the pilfering." Id.  The Daily News article reported that some Philadelphia firefighters engaged in sexual misconduct in connection with their employment, while an accompanying photograph identified Francis Cheney as a Philadelphia firefighter. No reasonable reader could find a basis for Cheney's allegation that the article accused him of sexual misconduct.

This case is distinguishable from Wallace v. Media News Group, Inc., 568 F. App'x 121 (3d Cir. 2014) (non-precedential) and Peck v. Tribune Co., 214 U.S. 185 (1909), in which the plaintiffs' photographs appeared with captions incorrectly identifying them as other people. In its non-precedential opinion in Wallace, our Court of Appeals held -- after noting that there was no Pennsylvania law on point -- that the placement of plaintiff's photograph in an article about another person could constitute a description or circumstance identifying the plaintiff. 568 F. App'x at 125. In Peck, the Supreme Court of the United States held that the use of plaintiff's portrait rendered the publication "of and concerning the plaintiff," even though the advertisement

used another person's name and statements in connection with the portrait. 214 U.S. at 189. In those cases, the content of the publications clearly meant to refer to the accompanying portraits of the plaintiffs, even though the portraits were of other people. Here, Cheney's picture correctly identifies him, and the accompanying article makes no reference to him, the picture of him, or any one specific firefighter that a reader could reasonably infer was meant to be him. Though Cheney is the only named firefighter in the publication, there is nothing in the article connecting him to the described scandal. As such, the innuendo Cheney suggests is not warranted, justified, or supported by the publication. See ToDay's Housing v. Times Shamrock Commc'n, Inc., 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011) (explaining that the legal test is whether the challenged language could "fairly and reasonably be construed" to imply the defamatory meaning alleged by a plaintiff).

Because Cheney cannot establish that the defamatory statements in the article are capable of being reasonably understood to refer to him, he cannot establish a claim for defamation or libel. We will therefore dismiss Count II of the complaint.

### C.     Count III: Intentional Infliction Of Emotional Distress

The Pennsylvania Supreme Court has not expressly recognized a cause of action for intentional infliction of emotional distress, but it frequently cites to Restatement (Second) of Torts § 46 for the minimum elements necessary to sustain such a cause of action. Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing Kazatsky v. King David Mem'l Park, 527 A.2d 988 (Pa. 1987)); accord Hoy v. Angelone, 720 A.2d 745, 753 n.10 (Pa. 1998). Section 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement

(Second) of Torts § 46(1). The Comments to Section 46 explain that "extreme and outrageous conduct" goes "beyond all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at cmt. d.

The court determines in the first instance whether the conduct could reasonably be regarded as sufficiently extreme or outrageous. Salerno v. Philadelphia Newspapers, Inc., 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988) (describing the limited number of cases in Pennsylvania meeting this standard). Extreme and outrageous conduct has included recklessly diagnosing a fatal disease, mishandling corpses, denying medical treatment in an emergency room, and encouraging young children to engage in sexual activity. Id. It has not included delayed or diverted airline travel itineraries, veterinarian error causing a pet's death, the use of racial epithets by a store employee toward a customer, the publication of letters of "no confidence" in a colleague, and the publication of a newspaper article about possible motives for a shooting. Id.

The Daily News's alleged conduct is not sufficiently extreme or outrageous to establish liability for intentional infliction of emotional distress. We have already determined that Cheney cannot establish a claim for false light/invasion of privacy or defamation and libel. While we must accept all of Cheney's well-pleaded facts as true, we give no such credit to his legal conclusions.  But, even if we did, and agreed that the Daily News created the false impression that he was one of several firefighters and/or other city employees involved in such a scandal, it would not be enough to establish a claim for intentional infliction of emotional distress. Being falsely implicated in lewd or lascivious conduct is unfair and unfortunate -- and sometimes defamatory -- but not extreme or outrageous. Further, as explained above, the article is not capable of reasonably being understood as referring to Cheney or implicating him in the scandal and therefore does not defame him. We will therefore dismiss Count III of the complaint.

## V. Conclusion

Cheney cannot establish that the Daily News invaded his privacy by casting him in a false light, defaming him, or publishing libelous comments about him because the article is not capable of reasonably being understood to refer to him or implicate him in the scandalous conduct described therein. And, even if the Daily News had, such tortious conduct would not be sufficiently extreme or outrageous to constitute intentional infliction of emotional distress. We will therefore grant the Daily News's motion and dismiss the complaint. An appropriate Order follows.

> BY THE COURT:
>
> /S/ STEWART DALZELL, J.